## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDDIE SPICER,
    *Plaintiff*,

    v.

BURDEN *et al.*,
    *Defendants*.

No. 3:19-cv-1472 (JAM)

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff claims that he had a constitutional right to refuse to tell the police who he was after they pulled him over for driving a car through stop signs at traffic intersections. He demands that the police pay him $60 million for arresting, searching, and jailing him after he repeatedly refused to say who he was. Because the plaintiff has not shown that he had a constitutional right to refuse to identify himself to the police, I will grant the police defendants' motion for summary judgment.

### BACKGROUND

Plaintiff Eddie Spicer has filed a *pro se* complaint arising from his arrest by the local police in Stratford, Connecticut. The complaint names as defendants the Town of Stratford as well as several individual police officers.[1] I will first review the allegations of the complaint before reviewing the summary judgment record.

### *The complaint*

According to the verified complaint, Spicer and a "guest" were in a "conveyance" that was stopped by two Stratford police officers on the evening of July 6, 2017.[2] Spicer was not

---

[1] Doc. #1.
[2] *Id.* at 3 (¶¶ 11, 13, 15).

engaged in any criminal activity.[3] When Spicer asked one of the officers what crime he was suspected of committing and when she did not give him an answer, he refused to identify himself.[4] He was forced out of his "conveyance" and "immediately cuffed" and then searched without his consent.[5]

Two more police officers soon arrived on the scene.[6] They searched the "conveyance" without his consent or a warrant.[7] In addition, one of the officers searched Spicer without probable cause or a warrant.[8] Spicer was arrested but not read his *Miranda* rights.[9]

According to Spicer, he did not resist arrest or do anything to provoke the arrest.[10] He was arrested without cause and without a warrant.[11] His identity still was unknown to the officers, and he was taken to jail as a "John Doe" defendant.[12] One of the officers told Spicer that he would never be let out of jail if he did not tell the police who he was.[13]

Spicer spent an unpleasant night in the police jail before being transported the next day to the Bridgeport Correctional Center where he remained for several more days.[14] Then on July 10, 2021, Spicer was released but forced to return to the Stratford police department to be fingerprinted and then searched and jailed by another police officer for an hour before again being released.[15]

---

[3] *Ibid.* (¶ 12).
[4] *Ibid.* (¶ 14).
[5] *Ibid.* (¶¶ 15-17).
[6] *Ibid.* (¶ 18).
[7] *Ibid.* (¶ 21).
[8] *Id.* at 4 (¶ 22).
[9] *Ibid.* (¶¶ 23-24).
[10] *Ibid.* (¶ 25).
[11] *Ibid.* (¶ 27).
[12] *Ibid.* (¶¶ 24, 26).
[13] *Ibid.* (¶ 31).
[14] *Ibid.* (¶¶ 32-34). The Court takes judicial notice that the Bridgeport Correctional Center is a prison administered by the Connecticut Department of Correction and not by the Town of Stratford or any of the defendants in this action.
[15] *Ibid.* (¶¶ 35-36).

The complaint alleges several causes of action under 42 U.S.C. § 1983. The first three counts allege that the defendants violated Spicer's right to be free from unreasonable search and seizure under the Fourth Amendment, his right to due process under the Fifth and Fourteenth Amendments, and his right to be free from cruel and unusual punishment under the Eighth Amendment.[16] The last two counts of the complaint allege that the Town of Stratford should be liable for maintaining a pattern and practice of depriving liberties and property as well as for failing to properly train and supervise its employees.[17] Spicer demands $10 million in compensatory damages and $50 million in punitive damages.[18]

### Summary judgment

The defendants have moved for summary judgment.[19] In accordance with the Court's local rules for the filing of a summary judgment motion, they have filed a statement of material facts along with supporting admissible evidence.[20] They have also served on Spicer the notice that is required under the Court's local rules to ensure that a *pro se* party is advised in plain and easily understood terms of the necessity to file an objection to a motion for summary judgment and how to properly dispute the moving party's statement of facts by means of a counter-statement of material facts with specific citations to evidence.[21]

---

[16] *Id.* at 6-7 (¶¶ 50-59).
[17] *Id.* at 7-8 (¶¶ 60-68).
[18] *Id.* at 8.
[19] Doc. #26.
[20] Doc. #26-2; D. Conn. L. Civ. R. 56(a)(1). The supporting documents include a video of a portion of Spicer's interaction with Officer Burden, police reports, and deposition transcripts, all of which are generally admissible evidence for summary judgment purposes. *See, e.g.*, Fed. R. Civ. P. 56(c); *Davis v. City of New York*, 2021 WL 3492307, at *11 (E.D.N.Y. 2021) (police reports).
[21] Doc. #27; D. Conn. L. Civ. R. 56(b) (requiring service of notice to self-represented litigants explaining requirements to oppose a summary judgment motion); D. Conn. L. Civ. R. 56(a)(2) (setting forth requirements for party opposing motion for summary judgment to file a statement of material facts responding to each of the facts stated by the moving party and including additional material facts).

I granted Spicer's motion for an extension of time to file his opposition to the motion for summary judgment.[22] But rather than file an opposition in the form he was told he must follow, Spicer instead filed a motion to strike the defendants' summary judgment motion as "immaterial, impertinent, or scandalous" under Fed. R. Civ. P. 12(f).[23] His motion to strike does not include any fact statement or evidentiary materials as required in order to properly dispute the statement of facts filed by the defendants with their summary judgment motion. *See* D. Conn. L. Civ. R. 56(a)(1)-(2).[24]

As a result of Spicer's failure to file a statement of facts as required under Local Civil Rule 56(a)(2), I will credit the statement of facts filed by the defendants under Local Civil Rule 56(a)(1) to the extent these stated facts have been properly supported by evidence that is admissible for summary judgment purposes. *See* D. Conn. L. Civ. R. 56(a)(3); *see also Grimes v. McDonald*, 2021 WL 3773327, at *2 (D. Conn. 2021) (similarly crediting defendants' properly supported statement because of *pro se* plaintiff's failure to properly dispute the defendants' version of facts despite being advised of the necessity to do so and how to do so); *Mayo v. City of New Britain*, 2021 WL 681146, at *3-4 (D. Conn.) (same), *appeal dismissed sub nom. Mayo v. Fernandez*, 2021 WL 3783099 (2d Cir. 2021).

The following facts as stated by the defendants and supported by their evidentiary materials are accepted as true for purposes of this ruling. Spicer was driving a Chevy Trailblazer

---

[22] Doc. #31.

[23] Doc. #32.

[24] Spicer relies on the fact that he filed a verified complaint. Although the Second Circuit has made clear that "a verified complaint may serve as an affidavit for summary judgment purposes," it has further noted that "[t]his does not mean, however, that parties opting to file a verified complaint earn a special pass to avoid Local Rule 56.1." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000). In any event, as discussed below, it is apparent that the material allegations of the verified complaint are conclusively refuted by the video of Spicer's interaction with Officer Burden as well as by the police reports and deposition transcripts. For example, Spicer alleges that he was arrested and searched for no reason at all when in fact the evidence conclusively shows that he was arrested primarily because he refused to identify himself.

on the night of July 6, 2017 when he ran through two stop signs at intersections in Stratford,

Connecticut.[25] Officer Burden conducted a motor vehicle stop.[26] She asked Spicer for his

identification but Spicer questioned why she needed to see his identification, although he did not

dispute having driven through a stop sign.[27] Officer Burden told him that she needed the

identification because he was the driver of a vehicle that she had just seen commit a motor

vehicle violation and she needed to identify him.[28]

Officer Burden told Spicer that, if he refused to identify himself, she would need to take

him to the police department in order to obtain his identity.[29] Spicer refused to identify himself

on the ground that it was not "Nazi Germany."[30]

The police instructed Spicer to get out of the car, and he continued to refuse to produce

any form of identification or state his name.[31] The police then handcuffed Spicer, patted him

down for officer safety, and placed him in the back of a police car.[32]

The passenger in the car driven by Spicer also refused to identify Spicer.[33] She claimed to

be the registered owner of the car but did not have proof of insurance.[34]

---

[25] Doc. #26-2 at 2 (¶ 4); Doc. #26-4 at 2 (Ex. B).
[26] Doc. #26-2 at 2 (¶ 5).
[27] *Ibid.* (¶ 10).
[28] *Ibid.* (¶ 9).
[29] *Ibid.* (¶ 12).
[30] *Id.* at 3 (¶ 14). Among the summary judgment exhibits is a 4-minute video of Spicer's initial interaction with Officer Burden when he was first stopped and still inside the car. Doc. #27-1 (Ex. A) (manually filed). Notwithstanding Spicer's querulous contentions that she could only ask him for identification if he was committing a crime (as distinct from a motor vehicle violation) and his accusation that she was engaged in "Nazi Germany" police tactics, the video shows that Officer Burden remained firm but thoroughly professional and polite throughout the recorded interaction. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (court may credit video that conclusively refutes a plaintiff's version of events).
[31] *Ibid.* (¶ 16).
[32] *Ibid.* (¶ 17).
[33] *Ibid.* (¶¶ 20, 23).
[34] *Ibid.* (¶ 21).

In the meantime, a trained police dog arrived on the scene and alerted for the presence of narcotics upon circling the car.[35] The police then searched the car but did not find any narcotics or contraband.[36]

After Spicer was transported to the police station, he said that he would not be fingerprinted and photographed for booking purposes because "it was theft of privacy."[37] Through further investigation the police determined Spicer's identify and that he had no apparent right to be driving the car because his Connecticut driver's license had been cancelled.[38]

The police charged Spicer with interference with a police officer (Conn. Gen. Stat. § 53a-167a) and with refusal to be fingerprinted (Conn. Gen. Stat. § 29-12).[39] He was also processed for motor vehicle offenses, including stop sign violations (Conn. Gen. Stat. § 14-301) and for failure to possess a driver's license (Conn. Gen. Stat. § 14-36(a)).[40]

Spicer's bond was set at $25,000, and he was taken to court the next morning.[41] The court eventually released Spicer several days later on July 10, 2017, subject to a condition that he report to the Stratford police department for fingerprinting.[42] He reported to the police station and was fingerprinted.[43]

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no

---

[35] *Id.* at 4 (¶¶ 30-31); Doc. #26-7 at 3 (Ex. E) (police dog alert and certification/training).
[36] Doc. #26-2 at 4 (¶ 32); Doc. #26-7 at 3 (Ex. E) (describing detached abnormalities found inside car that "mak[es] these areas easily accessible to hide/store contraband").
[37] Doc. #26-2 at 5 (¶¶ 34-35).
[38] *Ibid.* (¶ 36).
[39] *Ibid.* (¶ 37).
[40] *Ibid.* (¶ 38).
[41] *Ibid.* (¶¶ 39-40).
[42] *Id.* at 5-6 (¶¶ 41-42).
[43] *Id.* at 6 (¶ 43).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019). Because Spicer is a *pro se* party, his submissions must be treated with special solicitude and afforded a liberal interpretation. *See Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).[44]

### Fourth Amendment search and seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. I conclude on the basis of the summary judgment record that there are no genuine issues of fact to support Spicer's claim for a violation of the Fourth Amendment.

Was it lawful for the police to stop Spicer? Yes, it was. It does not violate the Fourth Amendment for the police to stop a motor vehicle that they observe violating a traffic law. *See Whren v. United States*, 517 U.S. 806 (1996). Having seen Spicer run through two stop signs, the police had probable cause to stop Spicer's car for motor vehicle violations. *See* Conn. Gen. Stat. § 14-301(c) (stop sign law).[45]

Was it lawful for the police to require Spicer to get out of his car? Yes, it was. It does not violate the Fourth Amendment for the police to require the driver of a car that has been stopped

---

[44] When quoting from rulings of other courts, this ruling omits internal quotation marks, citations, brackets, and ellipses unless otherwise noted.

[45] Indeed, Spicer does not dispute that Officer Burden had probable cause to stop his car; he just thinks it does not matter whether the police had grounds to stop his car. His motion to strike states: "No where in Plaintiff's complaint does he dispute whether Burden did or did not have probable cause to stop him, that matter is impertinent to this action." Doc. #32-2 at 1.

for a motor vehicle violation to get out of the car. *See Maryland v. Wilson*, 519 U.S. 408, 411-12 (1997).

Was it lawful for the police to ask Spicer to identify himself? Yes, it was. It is an infraction under Connecticut law for a motor vehicle operator to refuse a police request for his name and address, his driver's license, his registration, and proof of insurance. *See* Conn. Gen. Stat. § 14-217. "Once a lawful stop for investigative purposes is under way, it is mere routine for an officer to ask for identification," and "[s]uch a request is relatively non-intrusive, and there are important reasons why an officer needs to obtain a correct identification." *United States v. Salter*, 521 F.2d 1326, 1329 (2d Cir. 1975) (Friendly, J.).

Was it lawful for the police to arrest Spicer after he repeatedly refused to identify himself? Yes, it was. Spicer's refusal to identify himself gave the police probable cause to arrest him for obstructing and interfering with their duties as police officers. *See* Conn. Gen. Stat. § 53a-167a; *State v. Silva*, 285 Conn. 447, 455-458 (2008) (upholding conviction under § 53a-167a against defendant who refused to furnish license, registration, and insurance card to police who stopped her for traffic infraction). The Supreme Court has expressly rejected the argument that the Fourth Amendment bars the arrest and conviction of a suspect who refuses to disclose their name during a lawful police stop. *See Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*, 542 U.S. 177, 185-89 (2004).[46]

---

[46] The Supreme Court went on in *Hiibel* to reject the arrestee's argument that compelled disclosure of his name violated the Fifth Amendment's privilege against self-incrimination, because Hiibel's "refusal to disclose his name was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it would furnish a link in the chain of evidence needed to prosecute him." 542 U.S. at 190. Similarly, neither Spicer's complaint nor the summary judgment record reflects that Spicer based his refusal to identify himself on an articulated invocation of his right against self-incrimination under the Fifth Amendment. Nor has Spicer alleged that requiring him to identify himself amounted to compelled speech in violation of the First Amendment or that his arrest amounted to retaliation in violation of the First Amendment. *Cf. Zalewski v. City of New York*, 2018 WL 5113137, at *9 (E.D.N.Y. 2018) (dismissing on qualified immunity grounds First Amendment retaliation claim based on alleged retaliation following refusal of arrestee to identify himself).

Was it lawful for the police to handcuff and arrest Spicer? Yes, it was. Once they had probable cause to believe that he was interfering with their duties in violation of Conn. Gen. Stat. § 53a-167a, the police could lawfully place Spicer under custodial arrest. "If an officer has probable cause to believe that an individual has committed even a very minor offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Was it lawful for the police to search Spicer? Yes, it was. Upon arresting a suspect the police may engage in a search incident to arrest without additional grounds to believe that the suspect has a weapon, contraband, or evidence on their person. *See, e.g.*, *Maryland v. King*, 569 U.S. 435, 449 (2013); *United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004) (police may detain and search driver who refuses to furnish driver's license). Although the record is unclear as to when Spicer was formally placed under arrest, the police may engage in a search incident to arrest even before an arrest provided that they have probable cause to arrest and that an arrest soon follows. *See United States v. Diaz*, 854 F.3d 197, 205-09 (2d Cir. 2017).[47]

Was it lawful for the police to search the car? Yes, it was. Even affording Spicer the benefit of the doubt that he had a protectable Fourth Amendment interest in a car that he was driving but that he did not own, *see Byrd v. United States*, 138 S. Ct. 1518 (2018), the police may search a car without a warrant if they have probable cause to believe there is contraband inside. *See Collins v. Virginia*, 138 S. Ct. 1663, 1669-70 (2018). The alert of a trained police dog is enough to establish probable cause to search a car. *See United States v. McKenzie*, -- F. 4th --, 2021 WL 4096579, at *9 (2d Cir. 2021).

---

[47] Because Spicer was subject to a lawful search incident to arrest, there is no need to consider whether he was also subject to a lawful *Terry* frisk. *See Arizona v. Johnson*, 555 U.S. 323 (2012).

Was it lawful for the police to fail to read Spicer his *Miranda* warnings as he alleges? The answer does not matter to this lawsuit. Although failure to give *Miranda* warnings may be reason to preclude evidence against a defendant at a criminal trial, "the failure to give *Miranda* warnings does not create liability under § 1983." *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (*per curiam*).

Was Spicer detained too long and under unpleasant conditions? Again, the answer does not matter to this lawsuit. The summary judgment record shows that the police presented him in court the next morning after his arrest the night before and that a bond was set for $25,000. To the extent that Spicer complains about a long night in the police department lock-up cell in Stratford and then having to spend several more days at the Bridgeport Correctional Center before a judge ultimately released him, the complaint alleges no facts to suggest that any of the named police officer defendants were responsible for the unpleasant conditions at the police department or the later delay by a judge, prosecutors, or prison officials in releasing him from the Bridgeport Correctional Center. A police officer may be liable for violating a plaintiff's constitutional rights only if the evidence shows that the officer was personally involved in the conduct that violated the plaintiff's constitutional rights. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Was Spicer unlawfully detained when he returned to the police department after he was released from jail for fingerprinting? Although the complaint alleges a one-hour period of involuntary detention, the summary judgment record includes an officer's report of taking Spicer's fingerprints and without reference to any interim detention. It states that Spicer "came to Police HQ to be fingerprinted & processed" as instructed by the state court judge, that he was

"processed, fingerprinted and photographed," and that he was "released."[48] Because Spicer has not disputed any of the summary judgment record, there is no genuine fact issue to suggest that the officer unlawfully detained Spicer.

In short, there is no genuine issue of fact to suggest that any of the police officer defendants violated Spicer's rights under the Fourth Amendment to be free from unreasonable search or seizure. Absent facts to suggest a violation of the Fourth Amendment, I have no occasion to additionally consider the defendants' qualified immunity defenses. Accordingly, I will grant the individual police officer defendants' motion for summary judgment on Spicer's Fourth Amendment claim.

### Fifth and Fourteenth Amendment due process

The Fifth and Fourteenth Amendments protect the right to due process. *See* U.S. Const. amend. V and XIV. In the context of police conduct that amounts to a "search" or "seizure" under the Fourth Amendment, it is well-established that its constitutionality should be evaluated under the more specific protections of the Fourth Amendment rather than under the more generalized due process protections of the Fifth and Fourteenth Amendments. *See Russo v. City of Bridgeport*, 479 F.3d 196, 208-09 (2d Cir. 2007). Here, all of the police conduct about which Spicer complains involved searches or seizures. Accordingly, no genuine issue of fact remains to support his Fifth and Fourteenth Amendment due process claim against any of the defendant police officers.

### Eighth Amendment cruel and unusual punishment

The Eighth Amendment protects against cruel and unusual punishment. *See* U.S. Const. amend. VIII. These protections of the Eighth Amendment only apply to a person who has been

---

[48] Doc. #26-9 at 2-3 (Ex. G).

criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing. *See Whitley v. Albers,* 475 U.S. 312, 318-19 (1986); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Because the summary judgment record does not show that Spicer was convicted and sentenced, I conclude that no genuine issue of fact remains to support his claim for cruel and unusual punishment under the Eighth Amendment against any of the defendant police officers.

### *Municipal liability*

It is well established that a municipality may be liable under 42 U.S.C. § 1983 for the unconstitutional misconduct of its police officers only if the misconduct was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by the municipality's police officers. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978); *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018). Even assuming that any individual police officer of the Town of Stratford violated Spicer's constitutional rights, the summary judgment record is devoid of any evidence that this was done pursuant to any municipal policy, practice, or custom, or that any violation occurred as a result of the Town's deliberate indifference to supervision and training of its officers. Accordingly, I will grant the Town's motion for summary judgment.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion for summary judgment (Doc. #26). The Court DENIES the plaintiff's motion to strike (Doc. #32). The Clerk of Court shall close this case. It is so ordered.

Dated at New Haven this 30th day of September 2021.

12

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge